## TERRITORY *v.* CHARLES A. WILLS.

### No. 1298.

## TERRITORY *v.* JAMES K. KAHUE.

### No. 1299.

RESERVED QUESTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. J. T. DeBOLT, JUDGE.

ARGUED JANUARY 25, 26, 1921.        DECIDED FEBRUARY 4, 1921.

COKE, C. J., KEMP AND EDINGS, JJ.

OFFICERS—*policeman a public officer.*

A duly commissioned and acting police officer of the City and County of Honolulu is a public officer within the provisions of section 3944 R. L. 1915.

SAME—*special policeman without pay a public officer.*

A duly commissioned and acting special police officer without pay from any governmental authority, but paid by a private person for services in guarding private property of such person and appointed by the sheriff of the City and County of Honolulu at the request of such person, is a public officer within the provisions of section 3944 R. L. 1915 while acting under color of his commission.

SAME—*appointment of special police officer without pay, how and by whom made.*

The sheriff of the City and County of Honolulu is authorized to appoint without the approval of the civil service commission under chapter 117 R. L. 1915 special police officers without pay.

INDICTMENT AND INFORMATION—*sufficiency of.*

Where by the use of the words "as aforesaid" language theretofore used in an indictment is brought forward into the charging

part of the indictment it is unnecessary to repeat such language but the indictment will be read as though the language thereby referred to was repeated.

OPINION OF THE COURT BY KEMP, J.

The defendant Charles A. Wills, as a police officer of the City and County of Honolulu, was indicted for the crime of extortion under section 3944 R. L. 1915. The defendant James K. Kahue, as a special police officer, was indicted for the same crime under the same section.

The indictment against the defendant Wills, omitting the formal parts, is as follows: "that Charles A. Wills, at the City and County of Honolulu, Territory of Hawaii, and within the jurisdiction of this Honorable Court, on the third day of September, 1920, he, the said Charles A. Wills, being then and there a public officer, to wit, a duly commissioned and acting police officer of the District of Ewa, City and County of Honolulu, Territory of Hawaii, by color of his office, unlawfully, wilfully, corruptly, feloniously and extorsively and with intent in him, the said Charles A. Wills, to extort, obtain and procure of and from one Kajun Jaha certain sums of money for the sole benefit and profit of him, the said Charles A. Wills, did menace and threaten the said Kajun Jaha that unless he, the said Kajun Jaha would pay to him, the said Charles A. Wills, certain sums of money, he, the said Charles A. Wills, would arrest and cause to be confined in a jail of the City and County of Honolulu, Territory of Hawaii, said Kajun Jaha upon an alleged charge of unlawfully having in his possession certain intoxicating liquor known as okolehao. And that by means of the menace and threat made as aforesaid, the said Charles A. Wills, by color of his office, unlawfully, wilfully, corruptly, feloniously and extorsively did extort and obtain from the said Kajun Jaha certain moneys of the aggregate amount and value of

One Hundred ($100.00) Dollars, well knowing that he, the said Charles A. Wills, had not any legal authority or right to exact the same, and did then and there and thereby commit the crime of extortion in the second degree." The indictment against the defendant Kahue, with the exception of names, dates and the amount of money extorted, and he being described as a duly commissioned and acting special police officer without pay, is the same as the indictment against the defendant Wills.

The section of the statute under which the indictments are drawn is as follows:

"Sec. 3944. By public officer. Whoever, being a public officer of any description, civil, judicial, military, or other, by color of his office, wilfully and corruptly extorts from another for his own benefit and profit, any thing of value, knowing that he has not any legal authority or right to exact the same, is guilty of extortion in the second degree."

The defendants demurred to the indictments and by their demurrers raised the questions of whether a policeman and a special policeman are public officers within the meaning of said section 3944, and whether the indictments set forth facts sufficient to constitute an offense under the laws of the Territory of Hawaii and particularly under said section 3944. The circuit judge being in doubt as to the merits of the questions raised by the demurrers has reserved said questions to this court, the questions in the Wills case being as follows:

"1st. Is a duly commissioned and acting police officer, a public officer within the provisions of Section 3944 of the Revised Laws of Hawaii, 1915?

"2nd. Does the indictment set forth facts sufficient to constitute an offense under the laws of the Territory of Hawaii?"

and the questions in the Kahue case as follows:

"1st. Is a duly commissioned and acting special police officer without pay a public officer within the provisions of Section 3944 of the Revised Laws of Hawaii, 1915?

"2nd. Is a duly commissioned and acting special police officer without pay from any governmental authority, but paid by a private person or concern for services in guarding private property of such person or concern, and appointed by the sheriff of the City and County of Honolulu at the request of such person or concern, a public officer within the provisions of Section 3944 of the Revised Laws of Hawaii, 1915, while not in the act of performing such service but while acting under color of said commission?

"3rd. Does the appointment by the sheriff of the City and County of Honolulu of a special police officer without pay require the approval of the Civil Service Commission under Chapter 117, Revised Laws of Hawaii, 1915, and if so, is an appointee without such approval a de facto officer, and as such a public officer within the provisions of Section 3944 of the Revised Laws of Hawaii, 1915?

"4th. Does the indictment set forth facts sufficient to constitute an offense under the laws of the Territory of Hawaii?"

Both defendants are represented by the same counsel and in compliance with a stipulation entered into between counsel for the defendants and the deputy city and county attorney and approved by the court the two cases have been briefed and argued together and will be disposed of in one opinion.

First as to whether defendant Wills, a duly commissioned and acting police officer, is a public officer within the meaning of the section above quoted. We think the solution of this question depends upon whether there has been created by law a public office in which he has been selected to serve as required by law. A public officer is one who holds a public office. There is no contention

that the position which the defendant holds, if it rises to the dignity of an office, is not a public office. The contention is that a policeman is a mere employee of the City and County of Honolulu and holds a position as distinguished from an office. In support of this argument defendant cites the workmen's compensation act and the civil service act. Section 1872 R. L. 1915 (the civil service act) prescribes that no person shall hold or be appointed to any position either in the police department or in the fire department without the approval of the civil service commission in accordance with its rules and regulations. The succeeding sections refer to the persons to be "employed" in the police and fire departments and prescribes the manner of determining their qualifications for the "positions" sought in said departments and nowhere . refers to such positions as offices. The workmen's compensation act (Act 221 S. L. 1915) provides: "This act shall apply to employees (other than officials as hereinafter defined) of the Territory and all counties" etc. Officials excepted are those elected by popular vote or who receive salaries exceeding $1800 a year. The argument is that the reference in these statutes to a position and an employee, instead of to an office or an officer, indicates a legislative construction to that effect. We think, however, that there is nothing inconsistent in referring to an office as a position or even as an employment or to the incumbent of an office as an employee. In fact Chief Justice Marshall, than whom there is no greater authority, in defining the nature of an office, has recognized the fact that an office is an employment in the following language: "An office is defined to be 'a public charge or employment,' and he who performs the duties of the office, is an officer. If employed on the part of the United States, he is an officer of the United States. Although an office is 'an employment,' it does not follow that every

employment is an office. A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer. But if a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters on the duties appertaining to his station, without any contract defining them, if those duties continue, though the person be changed; it seems very difficult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer." *The United States* v. *Maurice,* 2 Brock, 96, 102.

The case from which the above quotation was taken was a civil suit by the United States against the principal and his sureties upon a bond given by an agent of fortifications and therefore does not meet defendant's contention that this being a criminal prosecution the statute should be strictly construed. However, in *United States* v. *Hartwell,* 73 U. S. 385, the supreme court in construing a criminal statute held that a clerk in the office of the assistant treasurer of the United States at Boston, appointed by him with the approbation of the secretary of the treasury, having the care and subject to the duty to keep safely the public moneys of the United States, was a public officer within the meaning of a statute which declared that "All public officers of whatever grade be and they are hereby required to keep safely without loaning, using, depositing in banks or exchanging for other funds than as allowed by this act, all public moneys collected by them," etc., and making a violation thereof a felony. In the discussion as to what constitutes an office the court said (p. 393) : "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument and duties. The employment of the defendant was in the

public service of the United States. He was appointed pursuant to law, and his compensation was fixed by law. Vacating the office of his superior would not have affected the tenure of his place. His duties were continuing and permanent, not occasional or temporary. They were to be such as his superior in office should prescribe. A government office is different from a government contract. The latter from its nature is necessarily limited in its duration and specific in its objects. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other." In discussing the question of construction the court said (pp. 395, 396): "We are not unmindful that penal laws are to be construed strictly. It is said that this rule is almost as old as construction itself. But whenever invoked it comes attended with qualifications and other rules no less important. It is by the light which each contributes that the judgment of the court is to be made up. The object in construing penal, as well as other statutes, is to ascertain the legislative intent. That constitutes the law. If the language be clear it is conclusive. There can be no construction where there is nothing to construe. The words must not be narrowed to the exclusion of what the legislature intended to embrace; but that intention. must be gathered from the words, and they must be such as to leave no room for a reasonable doubt upon the subject. It must not be defeated by, a forced and over-strict construction. The rule does not exclude the application of common sense to the term made use of in the act in order to avoid an absurdity, which the legislature ought not to be presumed to have intended. When the words are general and include various classes of persons, there is no authority which would justify a court in restricting them to one class and excluding others, where the purpose of the statute is alike applicable to all. The

proper course in all cases is to adopt that sense of the words which best harmonizes with the context, and promotes in the fullest manner the policy and objects of the legislature. The rule of strict construction is not violated by permitting the words of the statute to have their full meaning, or the more extended of two meanings, as the wider popular instead of the more narrow technical one; but the words should be taken in such a sense; bent neither one way nor the other, as will best manifest the legislative intent."

As we have said, there is no contention that the defendant Wills did not receive his appointment in the manner prescribed by law. Nor is there any contention that the position which he holds is not created by general law. The duties which a policeman is required to perform are of a public nature such as conserving the public peace, etc., and his employment embraces the idea of tenure, duration, emoluments and, as we have said, duties of a public nature. We think that we are not violating any of the rules laid down by the eminent authority cited in holding that a duly commissioned and acting police officer of the City and County of Honolulu is a public officer within the meaning of the statute involved. To hold otherwise we think would be to narrow the words used to the exclusion of what the legislature intended to embrace. In common parlance a policeman is referred to as an officer and to hold that the term "public officer," as used by the legislature in the statute in question, does not include a duly commissioned and acting policeman, who is placed in the most favorable position of all public officers to extort money from individuals by color of his office, would render the legislation absurd.

In this jurisdiction a policeman is neither required to give a bond nor take an oath of office and some argument is based on these facts. We think, however, that the oath

and bond are mere incidents of an office and no essential part of it. They may or may not be required of an officer according to usage or law. *State* v. *Stanley,* 66 N. C. 56, 8 Am. Rep. 488; *Johnston* v. *Wilson,* 2 N. H. 202, 9 Am. Dec. 50.

The question of whether the defendant Kahue is a public officer presents a different question. The indict-ment alleges that he is "a duly commissioned and acting special police officer without pay," etc. But it is stipu-lated by the parties that he was not appointed from the list of eligibles furnished by the civil service commission but was appointed and commissioned by the sheriff of the City and County of Honolulu, his commission being in the form of the commission of regular policemen with an annotation to the effect that he is commissioned "as spe-cial police without pay;" that he is employed by Y. Ahin as a watchman to guard a cane field and paid for such services by said Y. Ahin; that without the consent or in-stigation of Y. Ahin and not as any part of said service to Y. Ahin the defendant is alleged to have done the acts charged in the indictment.

Counsel for defendants make the same contentions as to the status of Kahue as are made as to the status of Wills and in addition contend that the sheriff of the City and County of Honolulu has no authority under the law to appoint special policemen whether selected from the list of eligibles furnished by the civil service commission or not and that if it should be held that he has such authority he is confined to such list of eligibles. Since no one except the sheriff is claimed to have the authority to appoint special policemen without pay the effect of saying that he is entirely without authority to appoint such a policeman is equivalent to saying that no such office exists and that therefore there can be no such officer. We shall therefore examine the statutes to see whether the sheriff has such authority.

Section 1442 R. L. 1915, enacted in 1888, authorized the high sheriff of the Territory, subject to the approval of the attorney general, to appoint policemen and also authorized him to appoint any number of special police officers to serve without pay without the approval of any one. The county act of 1905 among other provisions authorized the county sheriff of each county to exercise all the powers, privileges and authority, and required him to perform all the duties in his own jurisdiction, the same being the county in and for which he shall have been elected, as are by law provided to be had, exercised and performed by the high sheriff of the Territory. (Sec. 1559 R. L. 1915.) And again by section 1745 R. L. 1915, which is a part of the municipal act for the City and County of Honolulu, it is provided that the city and county sheriff shall have and exercise all the duties in his own jurisdiction as are by law provided to be had, exercised and performed by the high sheriff of the Territory or by the sheriffs of the various counties respectively. It is by virtue of these statutory provisions that the Territory contends the office of special policeman has been created and the authority to make the appointment vested in the city and county sheriff. In *Moir* v. *Knell*, 17 Haw. 135, section 1559 R. L. 1915 is construed and it was there held that the sheriff of Hawaii by virtue of the authority conferred upon him by said section had the authority to appoint police officers within his jurisdiction without the approval of the high sheriff, the attorney general or the board of supervisors. The reasoning there applied to the question of the appointment of regular policemen would apply to the appointment of special policemen under that act. Since the authority of the sheriff of the City and County of Honolulu to appoint special policemen is claimed under a statute exactly similar to the statute there discussed we would necessarily conclude that he is

authorized by said statute (Sec. 1745) to appoint special policemen without pay without the approval of any one unless by subsequent legislation that power has been revoked.

Counsel for defendants have called our attention to section 1751 R. L. 1915 as amended by Act 62 S. L. 1919, which reads in part as follows:

"The sheriff shall have power to appoint under civil service regulations, as provided by law, such police officers, and at such salaries as may be allowed from time to time by the board of supervisors; provided that no civil service regulation shall be construed to prevent the board from abolishing any position of police officer theretofore allowed and revoking the salary or compensation therefor, and in such case the person dismissed if in good standing may, by written request to the sheriff within thirty days, be placed at the top of any list of eligibles for civil service appointment. And the sheriff further shall have power to appoint and remove at pleasure any deputy sheriffs, clerks, stenographers or other assistants, not under civil service, and at such salaries or compensation as may be allowed by the board of supervisors."

This section, like section 1745, is a part of the municipal act of the City and County of Honolulu. As originally enacted it did not deal with the authority of the sheriff to make appointments but dealt with the authority and duties of deputy sheriffs within their respective districts. By the amendment of 1919 the portion above quoted was added. It will be seen that this section now deals quite generally with the authority of the sheriff to make appointments but it does not mention special policemen nor does it expressly repeal or amend the section (1745) under which the sheriff is authorized to appoint special policemen without pay. Does it repeal or amend said section by implication? When two statutes cover, in whole or in part, the same subject-matter, and are not

absolutely irreconcilable, no purpose of repeal being clearly shown,. the court, if possible, will give effect to both. When, however, a later act covers the whole subject of earlier acts and embraces new provisions, and plainly shows that it was intended not only as a substitute for the earlier act, but to cover the whole subject then considered by the legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of all former statutes relating to such subject-matter, even if the former acts are not in all respects repugnant to the new act. But in order to effect such repeal by implication it must appear that the subsequent statute covered the whole subject-matter of the former one, and was intended as a substitute for it. If the later statute does not cover the entire field of the first and fails to embrace within its terms a material portion of the first, it will not repeal so much of the first as is not included within its scope, but the two will be construed together, so far as the first still stands. (36 Cyc. 1077.) Applying these principles we conclude that section 1751 does not revoke the authority conferred upon the sheriff of the City and County of Honolulu to appoint special police officers without pay.

But the civil service act provides that "No person shall hold or be appointed to any position either in the police department or in the fire department of the City and County of Honolulu without the approval of the commission in accordance with its rules and regulations" (Sec. 1872 R. L. 1915). In *Moir* v. *Knell, supra,* the court came to the conclusion that a county sheriff is authorized to appoint police officers without the approval of the attorney general notwithstanding the fact that the high sheriff was authorized to appoint such officers (prior to the county act) only with such approval and notwithstanding the fact that this authority was transferred to county sheriffs in general language giving them the same

authority in their respective counties, on the ground that any other construction would fail to harmonize with the general intent of the act, and said: "Any other rule would have prevented (permitted) the evils of a house divided against itself and worked injuriously upon the entire department of justice" (p. 141). Likewise we think to hold that the sheriff is prevented by the civil service act from appointing special police officers except from the list of eligibles furnished by the civil service commission would be contrary to the general intent of the act and would work injuriously upon the entire department. The general purpose of the civil service act is to give permanence to the positions to which it relates, a purpose entirely inconsistent with the nature of the position held by a special police officer without pay who is generally appointed in cases of emergency and ceases to act when the emergency passes.

We conclude therefore that the statutes discussed neither repeal nor amend that portion of the statute conferring authority upon the sheriff of the City and County of Honolulu to appoint special police officers without pay and that under the indictment and the additional facts stipulated the defendant Kahue is a public officer within the meaning of the section of the statute under which the indictment is drawn.

Some argument is based upon the fact that the defendant Kahue was appointed at the request of a private person and is paid by such person for services in guarding private property. We cannot concede that this prevents him from being a public officer, entitled to all the immunities and subject to all of the penalties of a regular police officer while acting under color of his office. Such officers, in the opinion of the courts, act sometimes as servants of the persons employing them and sometimes as officers of the government. (*McKain* v. *Baltimore & O. R. Co.,* 64

S. E. (W. Va.) 18, 23 L. R. A. (N. S.) 289 and cases cited.) The effect of the decisions is that such an appointee although paid for all of his services by the person at whose instance he was appointed is not a servant of such person in respect to all the acts he performs by virtue of his office but only in respect to services rendered the person, such as guarding his property. The indictment alleges the acts complained of were "by color of his office" and it is stipulated that the person at whose request he was appointed did not consent to or instigate the acts charged in the indictment and that they were not done as any part of the service for which he was employed by said person. To hold that such an officer does not come within the terms of the statute would be equivalent to licensing him to go forth armed with all the insignia of office to prey upon the public without incurring the risk of prosecution unless his acts came within the terms of some other statute.

We now come to a consideration of the indictments. Since the two indictments with the exception of names, dates and the amount of money extorted are the same we will use the indictment in the Wills case for the purpose of this discussion. It is attacked on the ground that it does not allege that the defendant extorted and obtained from any one "for his own benefit and profit" anything of value and therefore fails to charge the offense in the words of the statute or their equivalent. The indictment alleges in effect that the menace and threat named therein was used by the defendant with the intent to procure the money for his sole benefit and profit, and that by means of the menace and threat made as aforesaid, etc., he did extort and obtain from * * * certain moneys of the value of $100, but fails to allege that said moneys were actually obtained by the defendant for his own benefit and profit. It is the contention of counsel that notwithstand-

ing the allegation as to the intent with which the menace
and threat was used the indictment is fatally defective for
want of an averment that the money was actually ob-
tained by the defendant for his own benefit and profit.
The Territory contends that the reference to the menace
and threat "made as aforesaid" carries forward into that
portion of the indictment which charges the actual pro-
curement of the money the allegation that it was for his
sole benefit and profit.   It further contends that if this
does not constitute a direct allegation to the effect that
said money was obtained by defendant for his own benefit
and profit it is an indirect allegation of such fact and
therefore sufficient under section 3791E of Act 215 S. L.
1915, which provides that "No indictment or bill of partic-
ulars is invalid or insufficient for the reason merely that
it alleges indirectly and by inference instead of directly
any matters, facts or circumstances connected with or
constituting the offense, provided that the nature and
cause of the accusation can be understood by a person of
common understanding."

If the phrase "by means of the menace and threat as
aforesaid" does not refer to the intent with which said
menace and threat was used, as already recited, we are
unable to discover anything in the indictment to which it
does refer.  If such phrase does, as we think it must, refer
to the intent with which the menace and threat was used
by the defendant then the latter part of the indictment in
the Wills case would read as follows:   "And that by
means of the menace and threat made with the intent in
him, the said Charles A. Wills, to extort, obtain and pro-
cure of and from one Kajun Jaha certain sums of money
for the sole benefit and profit of him, the said Charles A.
Wills, the said Charles A. Wills by color of his office
unlawfully, wilfully, corruptly, feloniously and extor-
sively did extort and obtain from the said Kajun Jaha

certain moneys of the aggregate amount and value of one hundred ($100.00) dollars, well knowing that he, the said Charles A. Wills, had no legal authority or right to exact the same," etc. When thus read the indictment charges every element of the offense described in the section under which the indictment is drawn and must be held to be sufficient.

It follows from what we have said that both questions in the Wills case must be answered in the affirmative and that the first, second and fourth questions in the Kahue case should be answered in the affirmative. The first portion of the third question in the Kahue case should be answered in the negative. The second portion of said question need not be answered.

*H. E. Stafford,* Third Deputy City and County Attorney (*W. H. Heen,* City and County Attorney with him on the brief) for the Territory.

*C. S. Davis* (*Brown, Cristy & Davis* on the brief) for defendants.