## TERRITORY *v.* CHARLES A. WILLS.

## No. 1350.

### ERROR TO CIRCUIT COURT FIRST CIRCUIT.
### HON. J. J. BANKS, JUDGE.

ARGUED APRIL 24, 1922.          DECIDED JUNE 21, 1922.

## TERRITORY *v.* CLEOFE RUIZ.

## No. 1338.

### ERROR TO CIRCUIT COURT SECOND CIRCUIT.
### HON. L. L. BURR, JUDGE.

ARGUED APRIL 24, 1922.          DECIDED JUNE 21, 1922.

## TERRITORY *v.* ESPERDION SUNICO.

## No. 1362.

### ERROR TO CIRCUIT COURT FIRST CIRCUIT.
### HON. H. L. ROSS, JUDGE.

ARGUED MAY 1, 1922.          DECIDED JUNE 21, 1922.

### PETERS, C. J., EDINGS AND PERRY, JJ.

WRIT OF ERROR—*allowance.*

> Section 2526, R. L. 1915, providing that "No writ of error shall issue in a criminal case unless allowed by a justice of the supreme court * * *," being a particular enactment, will control in a proper case and is not repugnant to, nor was it by necessary implication repealed by, the general terms of Act 44, S. L. 1919, providing that "A writ of error * * * may be issued by the clerk * * * upon the application of any party deeming himself aggrieved by the judgment of a circuit court * * *."

SAME—*same—effect of failure to secure.*

> Until a writ of error in a criminal case is allowed by a

justice of the supreme court the court is without jurisdiction of the subject-matter of the writ.

SAME—*same—implied allowance.*

While no formality is required by statute in the allowance by a justice of the supreme court of a writ of error in a criminal case, it is a judicial act and in the absence of express allowance it must affirmatively appear from the record that in the performance of an act of the justice from which such allowance may be implied, he understood that he was acting in respect to such allowance and was exercising his judicial discretion upon the legal considerations involved therein.

SAME—*allowance after expiration of time limitation.*

After the expiration of the time within which a writ of error may be prosecuted a justice of the supreme court cannot allow a writ of error by a *nunc pro tunc* order.

OPINION OF THE COURT BY PETERS, C. J.

Writs of error were issued in these cases by the clerk of this court to review judgments of circuit courts of conviction of a crime. All involve similar questions of law and for convenience will be discussed and disposed of together.

Upon the cases being called for argument the court *sua sponte* called to the attention of counsel for plaintiffs in error the absence of an allowance of the respective writs as required by section 2526, R. L. 1915, and suggested that due thereto it was without jurisdiction of the subject-matter of the writs. Plaintiffs in error admitted that no request had been made of any justice of this court for the allowance of the writs and the same had not been allowed by a justice of this court and attempted to justify the absence of the allowance by the claim that allowance of writs of error in criminal cases was no longer necessary; that section 2526, R. L. 1915, had been repealed by implication by Act 44, S. L. 1919, and if not repealed, the writ in such case, though not expressly, had been impliedly, allowed by a justice of this court and this conrt should in its discretion (and

the plaintiffs in error each so moved) enter an order of allowance *nunc pro tunc* as of the dates of the issuance of the respective writs. On the other hand the Territory upon leave of court first thereto given, moved to dismiss the writs for failure to secure such allowance. To the motion of the Territory plaintiffs in error rejoined that this court has general appellate jurisdiction of writs of error in criminal cases and that the defect, if any, concerned merely the process by which this court acquires jurisdiction of defendants in error which the Territory could have, and had, waived and that the Territory was now estopped from objecting to the jurisdiction of the court over the parties defendants in error.

It seems clear that section 2526, R. L. 1915, was not repealed by implication, by Act 44, S. L. 1919, and that at the time of the issuance of the respective writs of error herein was in full force and effect. Prior to the passage of Act 44, S. L. 1919, sections 2518 to 2534, inclusive, of chapter 142, R. L. 1915, embodied the provisions of law pertaining to appeals by writ of error. By said Act 44, S. L. 1919, entitled, "An Act Relating to Writs of Error, and Amending Sections 2518, 2522, 2523, 2524, 2525, 2527, 2528, 2529, 2530, 2531, 2532 and 2533, and Repealing Section 2519, Revised Laws of Hawaii, 1915, Relative Thereto," the legislature, with the exception of section 2519, which was repealed, amended each of the sections of the Revised Laws enumerated in the title, setting forth in the amendatory act under the original section number, each section as amended. The amendatory act did not cover the entire subject of writs of error. All reference was omitted to section 2526 and to sections 2520 and 2521. Section 2519 was expressly repealed.

To sustain the contention of the plaintiffs in error it must be held that the terms of section 2526, R. L. 1915, and Act 44, S. L. 1919, in respect to allowance of writs

of error in criminal cases, are so repugnant to, and in conflict with, each other that the statute 'last passed (Act 44, S. L. 1919), being the latest expression of the legislative will, governs and controls although it contains no repealing clause. Repeals by implication are not favored. "But the repeal of statutes by implication is not favored by the courts. The presumption is always against the intention to repeal where express terms are not used. To justify the presumption of an intention to repeal one statute by another, either the two statutes must be irreconcilable, or the intent to effect a repeal must be otherwise clearly expressed. It follows that where the intention not to repeal is apparent or manifest from an act there is no room for repeal by implication, or the application of rules regarding implied repeal." 36 Cyc. 1071, 1072, title "Statutes," par. c. Nor is it sufficient that there be mere implication. The repeal must appear by necessary implication. "That it has not been expressly or by direct terms repealed is admitted; and the question resolves itself into the more narrow inquiry, whether it has been repealed by necessary implication. We say by necessary implication, for it is not sufficient to establish that subsequent laws cover some or even all of the cases provided for by it; for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnancy between the provisions of the new laws, and those of the old; * * *." *Wood* v. *United States,* 16 Pet. (U. S.) 342, 362, 363.

Sections 2518 to 2534, as contained in R. L. 1915, respecting writs of error, did not refer alone to writs of error in criminal cases. They covered writs of error in civil cases as well. By section 2525 it was provided: "Writs of error in civil cases may be issued by the clerk of the supreme court or his deputies, as of right in term time or vacation, upon the application of any party to

the original cause or of any personal representative of a deceased party." The scope of section 2518, R. L. 1915, was not increased nor enlarged by the amendatory act. The authority of the clerk to issue writs of error remains directory and not mandatory, except in so far as section 2525 as amended, taken together with section 2518 as amended, renders the duty of the clerk mandatory in respect to civil cases where the writ issues as a matter of right. That the application for a writ and the writ "may," in the former case, and "shall," in the latter, be in substantial terms prescribed by sections 2529 and 2530, respectively, as amended, has no controlling influence. Neither the inherent qualities of the writ nor its allowance by a justice of this court demand that such allowance be a part of the application for the writ or a part of the writ itself. Such allowance might properly be indorsed on the writ or be the subject of an independent order. That section 2518 as amended is in general terms and may be said to include writs of error in criminal cases does not create a repugnancy operating to repeal section 2526, the particular statute in respect to allowance of writs of error in criminal cases. They do not conflict, but on the contrary do and can consistently coexist.

In the instant case the title of the amendatory act, the manner of the amendment, the subject-matter of the statutes amended and the absence of reference to section 2526 clearly indicate that the legislature did not intend to repeal section 2526, but on the contrary intended that the supervisory control of writs of error in criminal cases by a justice of this court should continue as formerly.

The rule of interpretation of general and particular statutes in respect to the same general subject-matter applies. "When two statutes cover, in whole or in part, the same subject-matter, and are not absolutely irreconcilable, no purpose of repeal being clearly shown, the

court, if possible, will give effect to both. Where, however, a later act covers the whole subject of earlier acts and embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of all former statutes relating to such subject-matter, even if the former acts are not in all respects repugnant to the new act. But in order to effect such repeal by implication it must appear that the subsequent statute covered the whole subject-matter of the former one, and was intended as a substitute for it. If the later statute does not cover the entire field of the first and fails to embrace within its terms a material portion of the first, it will not repeal so much of the first as is not included within its scope, but the two will be construed together, so far as the first still stands." 36 Cyc. 1077, title "Statutes," par. b. "A general later (affirmative) law does not abrogate an earlier special one by mere implication. Generalia specialibus non derogant; the law does not allow the exposition to revoke or alter, by construction of general words, any particular statute, where the words of the two acts as compared with each other, are not so glaringly repugnant and irreconcilable as to indicate a legislative intent to repeal, but may have their proper operation without it. It is usually presumed to have only general cases in view and not particular cases which have been already otherwise provided for by the general act * * *. Having already given its attention to the particular subject, and provided for it, the legislature is reasonably presumed not to intend to alter that special provision by a subsequent general amendment, unless that intention is manifested in explicit language, or there be something which shows that the attention of the legislature had been

turned to the special act, and that the general one was intended to embrace the special cases within the previous one; or something in the nature of the general one making it unlikely that an exception was intended as regards the special Act." Endlich on the Interpretation of Statutes (1888), Sec. 223. See also *Manaku* v. *Moanauli,* 8 Haw. 381, 382; *Territory* v. *Wills,* 25 Haw. 747, 758.

Plaintiff in error Wills predicates his claim of implied allowance of the writ in his case upon the facts that after the expiration of the time within which a writ of error might be prosecuted one of the justices of this court enlarged the time within which the record on appeal, under Rule 1 of this court, might be filed and on four different occasions approved stipulations between counsel extending the time within which to file briefs under Rule 3 of this court, and bases his claim of waiver by, and estoppel of, the Territory upon such stipulations, the general appearance of the Territory and its failure to take timely advantage of the defect.

This court unquestionably has appellate jurisdiction by exceptions and writ of error in criminal cases properly brought before it and duly perfected according to law. Sections 2252 and 2526, being in *pari materia,* must be construed together. The issuance of a writ of error in a criminal case without the prior allowance by a justice of this court is prohibited. In this case the writ was not allowed. The writ was a nullity. Until allowance the jurisdiction of the court over the subject-matter of writs of error in criminal cases does not attach. "While under some statutes no judicial authority is required to authorize the institution of proceedings in error, as a general rule, since after conviction the presumption of innocence no longer exists, a writ of error will not lie without an order of the court allowing it." 17 C. J., title "Criminal Law," Sec. 3366, pp. 98, 99.

In *Guarantee Trust Co.* v. *P. R. & N. E. R. R. Co.,* 160 N. Y. 1, 5, the appeal was prosecuted without the prior allowance required by statute. The court said: "It is, therefore, manifest that at the time when the notice of appeal was served, the appellants had no right of appeal, and, hence, the service of the notice was without authority, and a mere nullity. * * * " In *S. S. Richmond Hill Co.* v. *Seager,* 160 N. Y. 312, 315, the court said: "We are clearly of the opinion that a party has no right to appeal from an order or judgment which is not appealable without an allowance by the appellate division until such an allowance has been obtained. It is from and by virtue of the order of the appellate division that the appellant acquires his right to appeal. Before that order is granted, no such right exists, for until then it is prohibited by the Constitution." (In the instant case prohibited by the statute itself.) "The order of the appellate division allowing an appeal is obviously a condition precedent to that right. Until it is obtained the right does not exist, and, hence, the notice of appeal served by the appellant anterior to obtaining such an order was a nullity and no valid appeal was taken." In *Farris* v. *State of Ohio,* 1 O. St. 188, 189, the court said: "Instead of hearing the case, the district court should have dismissed it. We are not prepared to say that the allowance could be waived. We incline to think that it could not. The district court or any judge of the supreme court has power, '*on good cause shown,* to issue writs of error.' 50 Ohio L. 69, sec. 13; Curwen's Stat. chap. .. sec. .. Whether by force of other parts of the statute, a writ of error is not a writ of course, in a civil cause, is a question about which there is a diversity of opinion; but there is no question but that in a criminal case the writ must be allowed. The power given to issue it is a power to issue it '*on good cause shown,*' and it would seem that the jurisdiction of the court depends

upon its being allowed. * * * The judgment of the district court must be reversed; and as this is done for the reason above stated without regard to the other points, the parties will stand as if no writ of error to the common pleas had ever issued. It will be time enough to determine whether the common pleas erred when a writ of error shall have been allowed." In *State* v. *Boyle,* 25 Md. 509, 519, the court said: "Without such a writ, issued by a competent tribunal, this court has no jurisdiction or power to review a judgment rendered by a circuit court in a criminal case. In this case the supposed writ of error, upon which the proceedings of the circuit court have been brought before us to review, appears upon inspection not to have been issued by any competent tribunal. It does not appear to have been issued or authorized by the circuit court, sitting as a court of chancery, but was issued and signed only by the clerk without the attestation of.the judge, and is not authenticated by the official seal. There is no authority given by the code or by any statute to the clerk to grant a writ of error; nor is the writ before us in confromity with the established practice in Maryland." In the case of *Wright* v. *State,* 14 So. (Fla.) 43, appeal by writ of error was taken from the denial of a writ of habeas corpus. The clerk of the circuit court of the county issued the writ. The court said: "There was no allowance or grant of the writ by this court, or by any of its justices, or the circuit judge, as provided .by section 1780, Rev. St., and consequently the writ is a nullity, and we have no jurisdiction of the cause." In *Speed* v. *Fry,* 128 S. W. (Ark.) 854, 855, the court said: "This court has held that the appellee may waive the want of an affidavit for appeal in the ·circuit court by failing to move to dismiss. * * * The reason is that the affidavit and prayer for appeal is a regulation for the sole benefit of the appellee. But the order of the

probate court granting the appeal is a prerequisite to the right of the circuit court to exercise jurisdiction, and for that reason cannot be waived." In *Drainage District No. 7, etc.,* v. *Stuart,* 147 S. W. (Ark.) 460, 463, the court said: "These statutory requirements are essential to jurisdiction; and therefore they cannot be waived. This is a special statutory proceeding; and, the statute having prescribed the manner in which the appeal shall be taken, it supersedes the general statute upon the subject of appeals * * *. The statute prescribing the method of taking appeals in these cases must be followed substantially, in order to give the court jurisdiction. * * * Under the general statute, the filing of an affidavit for appeal is not jurisdictional, and therefore may be waived by failure to have the trial court rule on a motion to dismiss, embodying in the motion such objection. The record in this case fails to show that there was a prayer for an appeal, which was granted by the county court. This court has often held that, in order to invest a court with jurisdiction, it is necessary that it appear that the appeal was prayed for and granted in the lower court." In *Barrel* v. *Transportation Co.,* 3 Wall. (U. S.) 424, the court said: "The filing of it" (a petition for appeal) "in the clerk's office, even if it could be regarded as addressed to the circuit court, would be of no avail, unless accompanied by an allowance of an appeal by that court; and in the case before us there was no allowance."

In the instant case the writ was not allowed. No orders were made by this court; no stipulations approved; in fact no steps were taken by the parties or the court (other than the issuance of the writ itself by the clerk) until after the expiration of the six months period within which the writ might be prosecuted. The situation was, and the result is, in all respects the same as in the case of the failure to present a bill of exceptions within the time

limitation fixed by statute. Former adjudication of this court might well be repeated here. "He is empowered to allow the bill only if it is presented during the term or within ten days thereafter, although he may allow further time for its presentation; but if an extension has not in the meantime been allowed how does the case stand at or immediately after the expiration of the ten days? Is not the power then exhausted and is not the time for presenting the bill at an end? We think both questions must be answered in the affirmative. If not, what is it that has extended the time and what that has kept the power alive? In this case, the ten days expired not later than November 7, 1901. In the interval between that day and November 20th following, did the defendant have any right to file a bill of exceptions? We think clearly not; * * * If the extension attempted in this case is valid so would a similar one be which is given six months or a year after the expiration of the ten days. We cannot believe that it was the intention of the legislature to authorize such a procedure. The mere consent of the parties could not, of course, confer jurisdiction when none otherwise existed." *Kapiolani Est.* v. *Peck & Co.,* 14 Haw. 580, 582, 583.

Allowance by implication, waiver by the Territory of the defect and its estoppel by failure to take advantage thereof, are beside the point. The writ of error was a nullity; the time limitation within which the writ might be prosecuted had expired, and neither the acts of a justice of this court nor of counsel could revive a right which had been lost by lapse of time.

The cases cited and relied upon by counsel for plaintiff in error to the effect that defects on appeal, even of the gravity of failure to prosecute the same within the time limitation fixed by statute, may be waived, are all cases in which the writ issued as a matter of right, and, if

applicable in civil cases, are not applicable in criminal
cases, in this jurisdiction, in the face of the plain inhibi-
tion of the statute that no writ of error shall issue unless
allowed by a justice of this court. "As a rule the order
allowing an appeal must be made or entered within the
time prescribed by statute; and although there are some
decisions to the contrary," (here follow some of the cases
cited and relied upon by plaintiff in error) "it is generally
held that a court cannot allow an appeal  *  *  * after
expiration of the time for appealing  *  *  *." 3 C. J.,
title "Appeal and Error," Sec. 1122, p. 1096. Upon
expiration of the six months period no action of this
court could revive a nullity. Nor could the acts of the
defendant in error, either expressly or by implication,
confer that right. Moreover, in the justices of this court,
and not in the court, is reposed the authority of allowance
of writs of error in criminal cases.

The requirement of a prior allowance by a justice of
this court and the express prohibition against the issu-
ance of any writ without such allowance were intended
by the legislature for the protection of the Territory, that
is to say, of the community generally. It cannot be waived
by the prosecuting department of the government or by
the courts. For some years past the feeling has been
growing amongst serious-minded men of ability that per-
haps there is something lacking either in the laws relating
to offenses and to criminal procedure or in the adminis-
tration of those laws by the courts. In many parts, if not
generally throughout the land, complaint is made that
crime is on the increase and that the government seems
unable to restrain it and hold it in check. While these
facts do not make the law any different today from what
it has been at any other time during the existence of our
statute, they at least should lead courts to be alert in
requiring observance of such safe-guards as are to be

found in existing legislation against unjustifiable appeals and delays in criminal cases.

This court is now without jurisdiction of the subject-matter of the within writ.

In the *Ruiz* case judgment was entered in the court below on January 17, 1921. The writ was issued out of this court on June 3 following. On June 20, 1921, upon motion duly made by the plaintiff in error in that behalf, the chief justice of this court allowed an amendment of the assignments of error theretofore filed, incorporating therein two additional assignments of error. On July 1, and August 1, 1921, plaintiff in error was granted additional time within which to file his opening brief. In the former case the order was signed by a justice; in the latter by the chief justice. On September 3, October 5 and November 2, 1921, stipulations extending the time of the Territory to file its brief were approved by the same justice, who, on December 10, 1921, also signed an order extending the time of the plaintiff in error to file his reply brief. Briefs of both parties were exchanged and no objection was made at any time by the Territory until the case was called for argument and then only after the suggestion of the court as hereinbefore related. It is upon these facts that the plaintiff in error bases his claim of implied allowance of the writ and waiver by the Territory.

Plaintiff in error treats the subject of the allowance of a writ of error by a justice of this court as though it were a mere perfunctory act granted as of course upon application. His claim apparently is that acts consistent with the existence of the writ imply its allowance. But other considerations are involved in the allowance of a writ of error than mere active or passive recognition of its issuance or existence and it is from the considerations involved that the presence or absence of implied allowance must be determined. Whether one act implies consent to

another act depends on whether both acts are so correlated that consent to the latter act is the natural concomitant or result of the performance of the former. But in order to determine their correlation there must first be understood the considerations that involve each act and what considerations, in whole or in part, are common to both so that from the performance of one we are led to the inevitable conclusion that consent to the other was intended.

Implication is defined: "Act of implicating; involvement; close connection or combination; that which is implied or involved; an inference."

We can readily appreciate instances in which the allowance of an appeal might be implied from accepting security or fixing a bond on appeal. But how can it be said that the enlargement of the time within which the record on appeal may be filed in this court, or the extension of time within which briefs may be filed, "involves close connection or combination" with, or bears "inference" to, the allowance of a writ of error? The one act involves merely the discretion of a justice of this court in the enforcement of the time limitations fixed by the rules of this court in regard to filing the record on appeal and filing briefs. The other involves judicial discretion. To allow, implies the right to refuse. The act contemplates knowledge of what is to be permitted. It is the act of a justice of this court in respect to a process of this court. It is a judicial act in contradistinction to a ministerial act, and above all it involves the consideration of probable error by the trial court.

Section 2526 is silent as to the considerations that should influence a justice of this court in either allowing or refusing a writ of error in a criminal case. The statutory right of appeal in criminal cases is affirmatory, however, of the similar remedy at common law and it is to the

common law that we must look for the meaning of the word "allowed," as found in this section. "The writ of error is a common law method of carrying up for review a criminal case from an inferior to a superior court. * * * The granting of it was in the discretion of the crown and was not usually opposed by the attorney-general. It was conceived of as merely the modification of the royal power to pardon, and the crown, having thus expressed its willingness to reverse, the king's bench usually reversed upon slight or trivial objections, or upon no error at all. Subsequently it was determined that the writ was a matter of right and not of favor, although it still remained, in theory at least, in the royal discretion. Hence the court of king's bench would not grant the writ unless the attorney-general issued the fiat; and, although in a proper case, that is, where there was probable cause of error, the fiat was required to be issued, yet the attorney-general was to determine on his own responsibility whether such a case was presented, and neither the court of king's bench nor the lord chancellor would review his determination. However, in a misdemeanor case, it might be that the court would order him to grant the writ. Thus, as a general rule, the writ was granted as of right in all cases brought for a misdemeanor upon probable cause, but could not be sued out to reverse a conviction for treason or felony except upon allowance." 17 C. J., title "Criminal Law," Sec. 3259, pp. 11, 12. Lord Mansfield in *Rex* v. *Wilkes,* 4 Burr. 2527, 98 Eng. Rep. 327, 339, said: "Till the 3d of Queen Ann. a writ of error in any criminal case was held to be merely ex gratia. Lord Keeper lays it down 'that a writ of error in a criminal matter was ex gratia Regis, in all cases,' and said, 'he had a collection of several cases out of the old books of the law, that were given him by Lord Chief Justice Hales, which shew that writs of error in criminal cases are not grantable ex

debito justitiae, but ex gratia Regis; and in such a case, a man ought to make application to the King, and he will then refer it to the counsel; and if they certify that there is error, the King will not deny a writ of error.' It was never granted, except when the King, from justice, where there really was error, or from favour, though there was no error, was willing the outlawry should be reversed. After a writ of error was granted, the Attorney-General never made any opposition; because either he had certified 'there was error,' and then he could not argue against his own certificate; or the Crown meant to show favour; and then he had orders 'not to oppose.' The King, who alone was concerned as the prosecutor, and who had the absolute power of pardon, being willing that the outlawry should be reversed, this court reversed upon very slight and trivial objections, which could not have prevailed if any opposition had been made, or if the precedent had been of consequence. * * * But in the 3d of Queen Ann. ten of the judges were of opinion 'that in all cases under treason and felony, a writ of error was not merely of grace; but ought to be granted.' Price and Smith were of a contrary opinion, 'that a writ of error was of grace only, in all criminal cases.' The ten did not mean 'that it was a writ of course;' but that, 'where there was probable error, it ought not to be denied.' It cannot issue now, without a fiat from the Attorney-General; who always examines whether it be sought merely for delay, or upon a probable error." See also *Regina* v. *Soley*, 2 Salkeld 594, 91 Eng. Rep. 503; *Crosby's Case*, 3 Wils. K. B., 188, 95 Eng. Rep. 1005.

Similar statutes have been elsewhere interpreted. In *People* v. *Rogers*, 13 Abb. Prac. 370, 374, the court said: "The counsel for the prisoner were mistaken in supposing that the prisoner is entitled to the writ of error as a matter of right. On the contrary, the statute especially pro-

vides that 'writs of error upon judgments rendered on any indictment for a capital offense shall not issue unless allowed by one of the justices of the supreme court * * *.' The power conferred by the statute to allow a writ of error in a criminal case, is a high judicial power, and the exercise of such power depends, not upon the discretion of the judge, but upon the particular case out of which such power arises. Before allowing the writ the judge should be satisfied that there is probable cause at least, to believe that the appellate court would reverse the judgment." In *Lavett* v. *The People,* 7 Cow. (N. Y.) 339, 343, the court said: "Our statute * * * enacts that writs of error in all civil cases, and in criminal cases not capital, shall be considered as writs of right; and issue of course; subject to the regulations prescribed by law; and in all capital cases, writs of error shall be considered as writs of grace; and shall not issue but by order of the chancellor, made upon motion or petition, notice whereof shall be given to the attorney general, or prosecutor for the people. In these cases writs of error are writs of right, as distinguished from writs of grace. * * * These writs of error have issued irregularly; and must be quashed." In *Colt* v. *People,* 1 Park. Cr. Rep., 611, 617, the court said: "This provision of the statute" (allowance of writs of error) "necessarily implies a duty on the part of the officer to whom the application for the allowance of the writ is made, to disallow the same if he has no reason to doubt the legality of the conviction of the prisoner. * * * Having therefore arrived at the conclusion that there is no probable cause for supposing that there is any error in the judgment in this cause, or any reason to doubt that the prisoner had been properly convicted * * *." In *Commonwealth* v. *Winnemore,* 2 Brewst. (Pa.) 378, 383, the court said: "I have looked into the exceptions presented by the prisoner's counsel

with care and anxiety, and seeing no reason for a doubt about the accuracy of the ruling of the learned judges of the Oyer and Terminer who tried this case, I find myself bound to refuse the allocatur for a writ of error." See also *Commonwealth* v. *Profit,* 4 Bin. (Pa.) 423, 427; *United States* v. *Plumer,* 27 Fed. Cas. No. 16,056, pp. 561, 573.

We unqualifiedly hold that under section 2526 R. L., 1915, before a writ of error can be allowed in a criminal case by a justice of this court he must be satisfied of probable error by the trial court.

Obviously there is nothing in common between enlarging the time for filing a record on appeal or extending the time to file briefs and the allowance of a writ of error in a criminal case. The judicial discretion exercised in each instance is widely different and unrelated. The only connection that exists is that the orders referred to, granting time, assume the existence of the writ. But that assumption is consistent with the further assumption that a justice other than the one so granting time previously allowed its issuance.

Further, while the statute does not prescribe any formal method of allowance, it must appear affirmatively from the record and not be left to conjecture or surmise. Before allowance by implication will be recognized it must appear that the act or acts, upon which the allowance of the writ is sought to be implied, contemplated allowance in the sense of the determination of probable error. The converse of the situation is better understood from the language of the court in *Nicholson* v. *Chicago,* 18 Fed. Cas. No 10,248, p. 208: "It may be true that counsel for the city did not come to the court and formally say, 'I ask for an appeal,' and the court did not formally say 'the appeal is allowed,' but the counsel for the city came into court and intimated to the court and gave the court to

understand that the city intended to appeal. The court so understood it and when the court approved of the bond the court did it upon the understanding that the city desired to take an appeal and intended to prosecute it."

It nowhere appears in the instant case that the justice, when he granted the time in respect to filing the record on appeal and filing briefs, understood that his allowance of the writ was requested or that in the granting of the time he was allowing the writ. The justice certainly never so understood it and in making the orders and approving the stipulations did not do it upon the understanding that the plaintiff in error was requesting the allowance or that he in so acting was granting an allowance of the writ of error.

There being an entire absence of connection between the acts of the justices in granting time and the considerations involved in the allowance of a writ of error we fail to see how an allowance can be inferred or implied.

Plaintiff in error asserts as another ground for implied allowance that "it has been the practice of this court for some time past to issue writs of error in criminal cases without any formal allowance by any justice of this court." Examination of the records of the court, however, reveals that since the passage of Act 44, S. L. 1919, it has been the uniform practice of plaintiffs in error in criminal cases to secure the formal allowance of the writ by a justice of this court. Of thirteen writs prosecuted during that period in but three instances did the plaintiff in error fail to secure such allowance. These three are the cases herein involved, of which two are represented by the same counsel. He also cites the *Chee Siu* case (No. 1296) as a similar instance. In that case the allowance by the chief justice is indorsed on the face of the writ.

As to the contention of plaintiff in error that the fault,

if any, was that of the clerk in failing to secure the allowance of the writ, for which the plaintiff in error should not suffer, its absence was as apparent to counsel for plaintiff in error as to the clerk. It was the duty of counsel, and not of the clerk, to see that the prerequisites to its issuance had been complied with. We know of no statute, and our attention has been directed to none, that requires this duty of the clerk.

The motion of the plaintiff in error for an order of allowance *nunc pro tunc* comes too late. 3 C. J., title "Appeal and Error," Sec. 1122, p. 1096. Moreover, such an order contemplates the existence of an allowance, express or implied, which the record does not sustain. In *Guarantee Trust Co. v. P. R. & N. E. R. R. Co., supra,* where a similar motion was made, the court on page 7 said: "Moreover, there having been no previous order allowing an appeal, the appellate division had no authority to grant such an order *nunc pro tunc.* The theory upon which an order may be granted to take effect as of a previous date, is that some ruling has been made which was not properly, or was improperly, entered. A court has no power to have a new order or ruling so entered, thus bringing into the record an element which did not previously exist. The facts must exist, and then if the record of them is imperfect or incomplete, it may be amended, but if the record shows the actual facts then no order can be properly made changing them so as to take the place of an act that was required to be previously performed. While the court may record an existing fact *nunc pro tunc,* it cannot record a fact as of a prior date when it did not then exist."

In the *Sunico* case the judgment was entered in the trial court on October 18, 1921. The writ was issued November 28, 1921. Similar orders extending the time within which to file the record on appeal and to file the

briefs were made.  There is nothing in this case to distin-guish it from the *Ruiz* case.

It is ordered that the writ issued in each case be and the same is hereby dismissed.

*C. S. Davis* (*Brown, Cristy & Davis,* on the brief) for plaintiff in error Wills.

*H. E. Stafford,* First Deputy City and County Attorney, for the Territory—defendant in error.

*C. S. Davis* (*Brown, Cristy & Davis* and *Eugene Mur-phy* on the brief) for plaintiff in error Ruiz.

*E. R. Bevins,* County Attorney of Maui (*Wendell F. Crockett,* Deputy County Attorney of Maui, with him on the brief), for the Territory—defendant in error.

*E. J. Botts* for plaintiff in error Sunico.

*H. E. Stafford,* First Deputy City and County Attorney (*W. H. Heen,* City and County Attorney, with him on the brief), for the Territory—defendant in error.