## EVA MACKENZIE *v.* PATRICK GLEASON, SHERIFF OF THE CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII.

### No. 1815.

ARGUED MAY 18, 1928.    DECIDED JUNE 4, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.
(Parsons, J., dissenting.)

This is a statutory submission upon agreed facts. On January 3, 1927, D. L. Desha, then sheriff of the City and County of Honolulu, dismissed from the office of matron of the city and county jail at Honolulu an incumbent who had taken the civil service examination and was qualified under the rules of that service to hold the office and in her stead appointed the present plaintiff who had not taken the examination and was not qualified under the rules of the civil service. On October 31, 1927, the present defendant, who had succeeded Desha as the sheriff of the City and County of Honolulu, dismissed the plaintiff from her position as matron at the city and county jail and reinstated the incumbent whom the plaintiff had succeeded. It is

claimed by the plaintiff that at the date of her appointment by Sheriff Desha there was no requirement of law that the matrons at the city and county jail in Honolulu should qualify by taking and passing an examination in conformity with the rules of the civil service, that, therefore, the dismissal of her predecessor and her own appointment were both legal, that by virtue of the provisions of Act 22, Laws 1927, approved on March 25 of that year, she "automatically became a civil service employee" and was "expressly exempted from said civil service examination" and that thereafter she was not subject to dismissal by the sheriff at his pleasure but could only be removed in accordance with civil service regulations. The defendant sheriff, on the other hand, claims that at the date of the appointment of the plaintiff the civil service regulations applied to the positions of matrons at the city and county jail; that the appointment of the plaintiff and the dismissal of her predecessor were both illegal and that he was legally justified in dismissing the plaintiff and in reinstating her immediate predecessor in office. The plaintiff asks that a writ of mandamus issue, compelling the defendant to reinstate her.

Beginning as early as 1859, the power of appointing jailors was vested in the sheriff. Section 207 (R. L. 1905, § 1577) of the Civil Code of 1859 provided: "Jailors, appointment. The high sheriff of the Territory is responsible for the safe keeping of all prisoners; and therefore he shall have the nomination and appointment, with the approval of the attorney general, of all jailors and other prison officers, who shall hold office during the pleasure of said high sheriff. Such jailors, and other officers, shall be men of sobriety, honesty and industry."

By the same Code, in section 217 (R. L. 1905, §1589; R. L. 1915, § 1467; and R. L. 1925, § 1528), it was pro-

vided: "Female prisoners. Female prisoners shall be kept entirely separate from the male prisoners and shall be employed in making mats, in sewing, in washing the clothes of the prisoners and in such other suitable occupations as the high sheriff shall direct."

Continuing the same policy, Laws 1888, chapter 8, section 9 (R. L. 1905, § 1563), provided: "It shall be the duty of the high sheriff, and of the several sheriffs within their respective jurisdictions, to preserve the public peace, to have charge of all jails and prisons, to safely keep all persons committed to their charge, to execute all lawful precepts and mandates directed to them by any judge, court, head of department or other person thereunto authorized; to arrest fugitives from justice, as well as all criminals and violators of the laws; and generally to perform all such other duties as may be imposed upon them by law, for any of which purposes they may command all necessary assistance."

Again, in Laws 1905, Act 39 (the County Act), chapter 15, sections 67 and 68 (R. L. 1915, §§ 1745, 1746, and R. L. 1925, §§ 1825, 1826, subsec. 6), it was provided: "Subject to the special provisions of this Act, the county sheriff of each county shall have and exercise all the powers, privileges and authority, and be required to perform all the duties in his own jurisdiction, the same being the county in and for which he shall have been elected, as are now by law provided to be had, exercised and performed by the high sheriff of the Territory or by the sheriffs of the various islands respectively; and shall have such other powers and duties as are by this Act conferred and which may be provided by any law hereinafter enacted by the legislative authority; provided, however, that nothing in this Act contained shall be construed to vest in the sheriffs of the various counties respectively the care, custody or control of any

territorial jail, house of correction or penitentiary, or the care and custody of any prisoners confined therein." "He shall,: * * * 6. Take charge of and keep the city and county jail and the prisoners therein."

Still later, by Laws 1909, Act 102, section 1 (R. L. 1915, § 1454, and R. L. 1925, § 1514), provision was made as follows: "Section 1577 of the Revised Laws is amended to read as follows: 'Section 1577. Jailors; Appointment. The high sheriff of the Territory is responsible for the safe keeping of all prisoners who may be confined or committed to the Oahu Prison. He shall, with the approval of the attorney general, appoint the necessary jailors and other officers at said prison. All other jailors shall be appointed by the sheriffs of the respective counties, including the City and County of Honolulu. The sheriffs within their respective counties and the sheriff of the City and County of Honolulu shall be held responsible for the safe keeping of all prisoners who may be confined within the various county or city and county jails respectively.' "

This was the state of the law until 1913. It seems clear that until then the high sheriff was vested with the power of appointing jailors to serve at Oahu Prison and that the power to appoint "all other jailors" was in the sheriffs of the respective counties, including the City and County of Honolulu. It is conceded by both parties to this submission that a matron at the city and county jail is a jailor within the meaning of these statutes.

In 1913 the legislature created a civil service commission and provided for the appointment of commissioners and defined their powers and duties (Laws 1913, chap. 51). By section 2 of that Act it was provided that "no person shall hold or be appointed to any position, either in the police department or in the fire de-

partment of the City and County of Honolulu, without the approval of the commission in accordance with its rules and regulations" and by section 6 that "whenever any person in the police department or fire department has been appointed under these provisions, he shall hold his position during good behavior, subject to removal only as provided by said rules and regulations."

In 1919 the legislature amended section 1751, R. L. 1915, so as to read as follows: "Section 1751. Police officers and other assistants. The sheriff shall have power to appoint under civil service regulations, as provided by law, such police officers, and at such salaries as may be allowed from time to time by the board of supervisors; provided, that no civil service regulation shall be construed to prevent the board from abolishing any position of police officer theretofore allowed and revoking the salary or compensation therefor, and in such case the person dismissed if in good standing may, by written request to the sheriff within thirty days, be placed at the top of any list of eligibles for civil service appointment. And the sheriff further, shall have power to appoint and remove at pleasure any deputy sheriffs, clerks, stenographers or other assistants, not under civil service, and at such salaries or compensation as may be allowed by the board of supervisors.

"Each deputy sheriff shall, within his respective district, have the powers and under the direction and control of the sheriff perform the duties required by law of the sheriff." L. 1919, Act 62, § 13 (the Municipal Government Act); R. L. 1925, § 1831.

There were no other relevant enactments prior to the date of the plaintiff's appointment, January 3, 1927; but on March 25, 1927, the legislature by section 1 of Act 22 of that session amended section 1831, R. L. 1925, so as to read as follows: "Section 1831. Police officers

and other employees. The sheriff shall have power to appoint under civil service regulations, as provided by law, such persons and employees, and at such salaries as may be allowed from time to time by the board of supervisors; provided, that no civil service regulation shall be construed to prevent the board from abolishing any position theretobefore allowed, and revoking the salary or compensation therefor and, in such case, the person dismissed, if in good standing, may by written request to the sheriff within thirty days be placed at the top of any list of eligibles for civil service appointment. And the sheriff further, shall have power to appoint and remove at pleasure any deputy sheriff and one stenographer not under civil service, and at such salaries or compensation as may be allowed by the board of supervisors.

"Each deputy shall, within his respective district, have the powers and, under the direction and control of the sheriff, perform the duties required by law of the sheriff.

"This section shall not be construed to require the examination of any person or employee appointed by the sheriff and who is in office on the date this Act becomes effective."

At the date of the appointment of the plaintiff and the removal of her immediate predecessor, what was the state of the written law on the subject of the power to appoint and remove matrons at the city and county jail? If, subsequent to the adoption of the Civil Service Act of 1913 and prior to the appointment of the plaintiff, there had been no other legislation, there might be a question susceptible of argument on both sides as to whether a matron at the city and county jail held a position "in the police department", particularly in view of the fact that in the revisions of 1905, 1915 and

1925 separate chapters were devoted to the subjects "police" and "prisons, jailors". However that may be, it will be assumed for the purposes of this opinion that if the Civil Service Act stood alone, its correct construction would be that a matron held a position "in the police department". While Act 62, Laws 1919, does not expressly repeal or amend sections 2 and 6 of the Civil Service Act, it contains within itself evidence that it was intended to amend that Act. The Civil Service Act refers to all positions in the police department. The Act of 1919 clearly authorizes the sheriff to appoint, "not under the civil service", clerks and stenographers in the police department proper, as well as clerks and stenographers in the jails or other branches of the sheriff's office. The above quoted provision from section 13 of Act 62, Laws 1919, first declares that the sheriff shall have power to appoint, under civil service regulations, such "police officers" and at such salaries as may be allowed from time to time by the board of supervisors and then provides that the sheriff shall have power to appoint and remove at pleasure and not under civil service "any deputy sheriffs, clerks, stenographers or other assistants". The title of the section is "police officers and other assistants". The term "other assistants" is there used obviously as including all persons other than police officers who were to be subject to appointment by the sheriff. Had it been the intention to place or to continue under civil service regulations assistants other than police officers, provision to that effect could have been easily made in the first part of the section. Instead of providing, however, that police officers and other assistants should be appointed under civil service regulations and then limiting the power to appoint, not under civil service regulations, to deputy sheriffs, clerks and stenographers, the reverse was done.

Not only was the power to appoint under civil service regulations confined to the appointment of police officers, but this was supplemented by the statement that, not under civil service, the sheriff could appoint deputy sheriffs, clerks, stenographers and other assistants. It seems to us to be clear that the intent of this statute was to limit the application of civil service regulations to "police officers" only and to enable the sheriff to appoint, in addition to his deputy sheriffs, all of his other assistants including clerks, stenographers, jailors and others, untrammeled by the limitations of the civil service. The correctness of this view seems to us to be emphasized by the language of the provisions of Act 22, Laws 1927. In this latest Act the sheriff is declared to have the power to appoint, under civil service regulations, "such persons and employees" as may be allowed by the supervisors and he is limited in the matter of appointments not under civil service to the appointment of a deputy sheriff and one stenographer. The latest Act shows as clearly an intention to broaden the application of the civil service regulations as the Act of 1919 shows an intention to narrow their application. Nor can it, we think, be held that a matron or jailor falls within the classification of "police officers" rather than within that of "other assistants". Matrons and jailors in ordinary language are not regarded as police officers. The duties of the two classes of officers differ widely. There is nothing in the statutes to indicate that jailors or matrons were regarded by the legislature as police officers.

In our opinion, at the date of the plaintiff's appointment, the sheriff had the power to appoint and to remove matrons and other jailors at his pleasure without regard to civil service regulations and, therefore, the dismissal of the plaintiff's predecessor was not illegal and

the appointment of the plaintiff was legal. In October 1927, the plaintiff being lawfully in office as matron, was by the Act of March 25, 1927, expressly exempted from the necessity of taking an examination and was brought within the protection of the civil service regulations. She should be reinstated. A writ of mandamus as prayed for will be issued if necessary.

N. D. Godbold (Heen & Godbold on the briefs) for plaintiff.

C. E. Cassidy, Deputy City and County Attorney (also on the brief), for defendant.

#### DISSENTING OPINION OF PARSONS, J.

I respectfully dissent. In my opinion the position of matron in the city and county jail is a position "in the police department" of the city and county within the purview of Act 51, L. 1913, and of chapter 122, R. L. 1925, which, among other provisions, made appointment to and removal from positions in the police department subject to the approval and to the rules and regulations of the civil service commission. I cannot concur in the view of the majority that Act 62, L. 1919, so amends the civil service provision above referred to as to affect whatever power the earlier Act gave the civil service commission with reference to the appointment and removal of jailors and jail matrons.

The earlier part of section 13, Act 62, L. 1919, as more particularly set forth in the majority opinion, provides that the sheriff shall have power to appoint police officers under civil service regulations. And the later part of the same section provides that "the sheriff further, shall have power to appoint and remove at pleasure any deputy sheriffs, clerks, stenographers or other assistants, not under civil service * * *." I agree with the majority that jailors and matrons are not "police

officers" and that the power to appoint them is not conferred or continued by the earlier part of the statute last above referred to, but I do not concur in the view that the words "deputy sheriffs, clerks, stenographers or other assistants," used in the latter part of the section, include jailors and matrons and thereby remove the latter from the provisions of the Civil Service Act. This view is induced by the reasoning and authority of *Moir* v. *Knell,* 17 Haw. 135, 138, 139, which held that the portion of section 110 (a) of the County Act of 1905 which provided that "any county officer may, with the approval of the board of supervisors, employ such clerks and other assistants as may be necessary to aid him in the performance of the duties of his office," did not refer to appointments of police officers, the words "other assistants" having been construed with reference to their context by the rules *noscitur a sociis* and *ejusdem generis,* and account having been taken of the fact that the County Act, by reference to an earlier Act, itself provided for the appointment of police officers. By analogy the words "other assistants" in the 1919 amendment of the Municipal Government Act, under the rules of construction above referred to, should not be interpreted to include jailors and jail matrons, account being taken of the fact that an earlier amendment of the same general Municipal Act then in force had placed all appointments and removals in the police department within the rules and regulations of the civil service commission.

Act 62, L. 1919, does not cover the entire field of Act 51, L. 1913, and does not embrace within its terms material portions of the earlier Act. Therefore, within the rule approved in *Territory* v. *Wills,* 25 Haw. 747, 758, the later Act "will not repeal so much of the first as is not included within its scope, but the two will be construed together so far as the first still stands."

In this connection it is significant that the legislature of 1925 reenacted in the revision of that year the portions herein construed and other portions of both Acts, namely, that of 1913 and that of 1919, with their subsequent amendments.

In the view herein expressed the sheriff of the City and County of Honolulu on January 3, 1927 (prior to the approval of Act 22 of the Session Laws of that year), had no power to appoint and remove matrons of the city and county jail without the approval and free from the regulations of the civil service commission. In this view the removal of Abigail M. Borges and the appointment of Eva McKenzie as matron were illegal acts, and the latter is not entitled to reinstatement.