## TERRITORY *v.* HERBERT A. TRUSLOW.

## No. 1453.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED MARCH 7, 1923.                    DECIDED APRIL 27, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

CONTRACT—*duration of.*

The duration of a contract of agency or bailment is to be determined by the intent of the parties as expressed by or necessarily implied from the terms of the contract itself.

SAME—*same.*

Where the owner of capital stock of a corporation indorses in blank certificates thereof bearing his name as owner and delivers them to another for the purpose of sale at a minimum price, in the absence of evidence showing a contrary intention the continuance of the authority to sell such stock at the minimum price or better, until otherwise modified or revoked, is necessarily implied.

EMBEZZLEMENT—*conversion—intent—evidence of.*

An intent to defraud may be proved by direct evidence or by evidence of facts and circumstances from which it may be reasonably inferred.

TRIAL—*province of court and jury—instructions—credibility of accused.*

The credibility of the accused like that of every other witness is for the jury to determine. Where the defendant testifies in his own behalf it is not error for the court to call the attention of the jury to the fact that he is interested in the outcome of the case, to point out his situation and relation to it and to state that it is proper for the jury to consider these facts in determining his credibility.

CRIMINAL LAW—*trial—intructions—presumptions—fabrication of evidence.*

Where the testimony of facts or circumstances tends to support the inference that the defendant has purposely and inten-

tionally invoked a false and fabricated defense it is proper for the court to charge the jury in effect that if it believes from the evidence beyond a reasonable doubt that the defense is a false and fabricated one and that such false and fabricated defense was purposely and intentionally invoked by the defendant such false and fabricated defense forms a basis of a presumption of guilt against the defendant.

OPINION OF THE COURT BY PETERS, C. J.

The defendant was convicted by a jury of the first circuit court of the crime of embezzlement and prosecuted exceptions.

The assignments of error may be best appreciated by a brief summary of the evidence.

The evidence of the prosecution tended to show the following facts: In July, 1920, Manuel Branco, residing at Laupahoehoe, Hawaii County, sent six stock certificates, aggregating 1000 shares of the Olaa Sugar Company, Limited, bearing his name as owner and indorsed in blank, to the Security Trust Company of Hilo, of which the defendant was general manager and in complete control, accompanied by a letter authorizing the trust company to sell the stock at not less than $18 per share. Olaa stock was selling generally in July, 1920, at from $16⅞ to $19 per share; in August following at from $13 to $18 per share, but thereafter to and including April, 1921, the market price was below $18 per share. Pursuant to its employment the trust company sent the stock to a firm of brokers in Honolulu for sale and the latter succeeded on July 31, 1920, in selling 200 shares at $18 per share. On August 2, 1920, the Security Trust Company mailed to Manuel Branco a sales memorandum accompanied by a letter advising him of the number of shares sold and price secured and informing him that its brokers were unable to dispose of any more at $18 at that time but that they expected to execute the balance of the order early in the week and that on receipt of returns from

Honolulu it (the trust company) would forward him a check in settlement. At the same time the Security Trust Company credited Manuel Branco in his personal account with it with the amount of the proceeds of such sale. On August 27, 1920, the trust company wrote the Honolulu brokers requesting that they return the unsold balance of Olaa stock belonging to Mr. Branco. This was done accordingly by return mail. On three different occasions while Olaa was below $18 the defendant requested Manuel Branco to permit him to sell the remaining unsold Olaa at the then prevailing market price but Branco refused.

On June 28, 1921, Manuel Branco died leaving a will in which the Security Trust Company was named as executor and appropriate proceedings were had in the fourth circuit court as a result of which the will was admitted to probate and the Security Trust Company appointed and qualified as executor thereunder. In September, 1921, an inventory was filed by the executor wherein was included the item "800 shares Olaa Sugar Co., Ltd. Par $16,000 Value $3,800." It is not pretended that Manuel Branco during the period in question held any more than the 1000 shares of Olaa herein referred to. This inventory bears the signature of the Security Trust Company, Limited, by the defendant as vice-president, and was personally verified by the defendant as containing a full, true and correct statement of all of the assets of the estate of said deceased which were given into the possession of the executor or of which he had any knowledge. In November, 1921, however, it developed that these 800 shares of Olaa stock had in fact been sold by the defendant on April 11, 1921, for $85⅝ per share. Neither the deceased nor any of his family had been advised of the sale; no credit had been given Manuel Branco on the books of the trust company for the amount of the proceeds of the sale, but on the contrary they had been

deposited by the Security Trust Company in a local bank to its credit and had been credited on the books of the trust company to itself personally as "trustee."

The only evidence by way of defense was that given by the defendant himself. In brief he testified that the original authority to sell of July, 1920, was modified by Branco on March 29, 1921, the limitations upon the selling price of the stock having been then removed by him and the defendant authorized to sell at such price as he in his judgment should deem advisable—later, however, if the price of Olaa went lower to buy in again to the same amount.

At the close of the case for the prosecution the defendant moved for a directed verdict upon the ground generally that the prosecution had failed to adduce evidence establishing or tending to establish the commission of the crime of embezzlement as laid in the indictment, and specially upon the ground that the prosecution had failed to prove that when the stocks were ordered sold by Mr. Truslow in April, 1921, it was done against the authority and contrary to the will of Manuel Branco. Both parties having rested this motion was renewed by defendant in the shape of a request for an instruction to the jury to bring in a verdict of not guilty. The motion for a directed verdict and the request for an instruction for a verdict of not guilty were respectively denied by the court and these rulings are assigned by the defendant as error. We will discuss the specific ground for the motion for a directed verdict first.

The theory of the defendant was and is that Branco having died prior to the trial and evidence from him contradicting the defendant's claim of modification of the contract being unavailable the jury was bound by the statement of the defendant that the contract had been modified and that the stock had been sold pursuant to the

modified instructions. With this we cannot agree. The deposit of the Olaa stock by Mr. Branco with the Security Trust Company for sale, whether considered as a contract of agency or bailment, contained nothing further than the bare authority to sell at a minimum price. No time limitation was placed upon the duration of the authority thus conferred. Under the circumstances the terms of the contract were plainly susceptible of the implication that the authority granted was to continue until otherwise modified or revoked. At the close of the prosecution's case there was no evidence tending directly or indirectly to show that the contract of July, 1920, had been modified or revoked. On the contrary the evidence was susceptible of but the one inference—that on April 11, 1921, at the time that the balance of the Olaa stock was sold by the defendant, the authority previously conferred had been neither modified nor revoked but was in full force and effect and that the stock had been sold contrary to the instructions given in respect thereto and without the consent and against the will of the owner, Manuel Branco.

The duration of a contract of agency or bailment is to be determined by the intent of the parties as expressed by or necessarily implied from the terms of the contract itself. Where as here the owner of capital stock of a corporation indorses in blank certificates thereof bearing his name as owner and delivers them to another for the pur· pose of sale at a minimum price, in the absence of evidence showing a contrary intention the continuance of the authority to sell such stock at a minimum price or better, until otherwise modified or revoked, is necessarily implied.

At the close of the entire case there was, due to the testimony of the defendant, evidence tending to show that the authority conferred upon the Security Trust

Company in respect to the sale of the Olaa stock had been modified and had the jury believed this evidence the defendant would have been entitled to a verdict of acquittal. The jury by its verdict apparently did not believe this evidence. Its verdict was tantamount to a holding that the instructions had not been modified; that the sale made by the defendant in April, 1921, was contrary to the instructions received by him concerning its sale and hence was without the consent and against the will of Manuel Branco.

As to the defendant's claim of failure of proof generally. The prosecution having shown that the stock was delivered to the defendant for sale at a minimum price and that the defendant contrary to his authority in the premises sold said stock and converted the proceeds of the sale thereof to the benefit of the Security Trust Company the Territory made out a *prima facie* case and the motion and the request for an instruction for a directed verdict were properly denied.

The prosecution was permitted to show over the objection of the defendant that after Manuel Branco's death David Branco, the son of the decedent, at the request of the defendant gathered together all the stocks, bonds and securities of which the deceased (Manuel Branco) died possessed and took them in to the defendant at the place of business of the Security Trust Company where the securities were checked off by the defendant against a list or inventory of the same prepared by the said David Branco; that the inventory contained an item "800 shares Olaa Sugar Company;" that when this item was reached in the course of the checking of the inventory by the defendant David Branco said to him: "You will know that I have here 800 shares of the Olaa stock, the certificates are held by the Security Trust Company," to which the defendant replied: "Yes I know about that," but that

neither at that time nor subsequently did the defendant advise the said David Branco that he had sold the 800 shares of Olaa in the month of April previous; that the defendant had filed the inventory in the matter of the estate of Manuel Branco, deceased, hereinbefore referred to, and that said inventory had been prepared by the trust officer of the Security Trust Company under the personal direction of the defendant, at which time the defendant had stated to the trust officer that the stock (referring to the item of 800 shares Olaa Sugar Company) was forthcoming from Honolulu. The defendant assigned the admission of this evidence as error. Obviously the purpose of this evidence was to show that the conversion by the defendant was felonious and with a fraudulent intent. All of this evidence tended to show that not only had the defendant violated the instructions under which the stock had been deposited with the Security Trust Company for sale but that he had made the sale without authority and that his subsequent actions in respect thereto were calculated to keep the same secret, thus indicating a false and fraudulent purpose and intent in so doing.

An intent to defraud may be proved by direct evidence or by evidence of facts and circumstances from which it may be reasonably inferred. The evidence complained of was properly admitted.

Instructions explaining the purposes of this evidence were given to the jury and are also made the basis of exceptions. We deem the objections made thereto to be without merit.

The court at the request of the prosecution charged the jury as follows: "You are instructed that in considering the testimony of the defendant you may do so in the light of the fact that he is the defendant and the interest he has in the verdict. And if you believe that

the defendant has wilfully testified falsely in any material particular in this case then you may disregard the defendant's testimony entirely except in so far as it may have been corroborated by other competent testimony." The defendant claims that this instruction is erroneous for three reasons: (a) In using the term "competent testimony" when the words "competent evidence" should have been employed; (b) in failing to make clear to the jury that it should not, even if it disbelieved a portion of the defendant's testimony, reject other evidence which it believed to be true, and (c) in singling out the defendant for condemnation, thus impressing it with the belief that the judge himself did not credit defendant's testimony.

We do not feel that the use of the word "testimony" instead of the word "evidence" had the effect claimed. While there is a distinction between the words "evidence" and "testimony" the meaning and intention of the instruction are plain and the jury was certainly not misled to the prejudice of the defendant. Nor did the instruction necessarily imply that the jury was bound to disregard all of the evidence of the defendant in the event that it found that he had wilfully testified falsely in any material particular in the case. The permissive auxiliary "may" left it optional with the jury. The instruction, other than its specific reference to the defendant, is in the usual form and had the defendant desired that the jury be further enlightened on the subject the way was open to him by requests for further instructions in that regard. None were asked for. Moreover the instruction did not have the effect of singling out the defendant for condemnation. Neither the subject of the instruction nor the language employed intimated in any way the judge's belief of, or disbelief in, the truth of the defendant's testimony nor was it calculated in any way to discredit the

defendant's testimony. As a general rule where the defendant takes the stand in his own behalf it is proper for the court to call the attention of the jury to the fact that he is the defendant and interested in the outcome of the case and to point out his situation and relation to it and to state to the jury that it is proper for it to consider these facts in determining his credibility. Randall on Instructions to Juries, Sec. 168 and cases cited; 16 C. J. title "Criminal Law," Sec. 2344, p. 958 and cases cited.

The court at the request of the defendant further instructed the jury that it was the sole judge of the sufficiency of the evidence and the credibility of the witness and we do not believe that the defendant was prejudiced in the slightest particular by the giving of the instruction complained of. Ordinarily this instruction is given in a general form applicable to all witnesses. But a general instruction would have been inapplicable here. The evidence adduced by the prosecution was either admitted by the defendant or left undenied. It was only in the inferences of which that evidence was capable that the prosecution and defendant differed.

The only question of fact in issue was whether the original authority to sell the stock had been modified. The prosecution offered evidence tending to show that it had not been modified or revoked but was in full force and effect on April 11, 1921. The defendant on the other hand admitted the terms of the original authority, as claimed by the prosecution, and admitted the evidence tending to show its continuance but offered evidence to the effect that the authority was modified and that his acts, while apparently inconsistent with his claim of modification, were in fact consistent therewith. Upon that state of the case it would have been improper for the court to instruct the jury generally on the subject of in-

tentional false swearing as to material facts. The only witness involved in the question of credibility was the defendant. For the court to have instructed the jury upon the credibility of the evidence of the prosecution which the defendant had in terms admitted would have been to stultify itself. Under all the circumstances the instruction was properly given.

The court also instructed the jury that "If you find from the evidence in this case beyond a reasonable doubt that the defense set up by the defendant Truslow is a false and fabricated one and if you further find that such false and fabricated defense was purposely and intentionally invoked by the defendant then you are instructed that such a false and fabricated defense forms the basis of a presumption against him because the law says that he who resorts to perjury to accomplish an end, this is against him and you take such action as the basis of a presumption of guilt." This instruction is assigned as error.

The facts testified to by the defendant and all the circumstances of the case tend to support the inference that the original authority of July, 1920, in respect to the sale of Branco's stock, had never been modified or revoked by Branco but was in full force and effect at the time that the defendant ordered the sale of the balance of the Olaa stock remaining unsold on April 11, 1921, and that the defense was a false and fabricated one. If true it would have been an absolutely good defense. The jury by its verdict stamped it as false. The defense was the product of the defendant. Its sole support was in the evidence of the defendant. This is not a case of mere conflict in the evidence. The defendant attempted by evidence extraneous to the main issue as developed by the prosecution to construct a defense to which he thought death had removed all likelihood of denial. As said by

the court in *Beck* v. *State,* 80 Ala. 1: "There is a prin-
ciple of law, that if a fraud on the court be attempted,
in the getting up of false testimony, or by any other
artifice tending, or designed to deceive or mislead, or to
make the false appear to be the true, and this is know-
ingly assisted, or procured to be done by the suitor, this
is a circumstance which the jury may rightly consider, to
the disadvantage of the party making or assisting in
such attempt. An honest cause, the law considers, needs
not the aid of such reprehensible methods. But, to justify
the application of this principle, there must be some proof
of it, or testimony of facts or circumstances, tending to
support such inference. Mere conflict among witnesses
examined on the opposing side, without more, does not
and can not raise such inquiry, or bring the principle re-
ferred to into play." See also 16 C. J., title "Criminal
Law," Sec. 2392, p. 986, n. 59; *Id.* Sec. 2378, p. 979, n.
72; *Allbritton* v. *State,* 10 So. (Ala.) 426; *Pilger* v. *Com-
monwealth,* 5 Atl. (Pa.) 309; *State* v. *Ward,* 17 Atl. (Vt.)
482.

The defendant was privileged to take the stand on his
own behalf. And having done so he cannot be heard to
complain that his evidence be measured by a rule of
credibility which the facts and circumstances of his evi-
dence warranted. The instruction in no way commented
upon the evidence. It was but the expression of a rule
of law determining its credibility, and however harsh it
was fully merited by all the circumstances of the case.
The instruction complained of has for its authority the
case of *Allen* v. *United States,* 164 U. S. 492 at 499. There
the court approving a similar instruction said: "In the
fifteenth assignment exception is taken to the following
instruction: 'You will understand that your first duty
in the case is to reject all evidence that you may find to
be false; all evidence that you may find to be fabricated,

because it is worthless; and if it is purposely and intentionally invoked by the defendant it is evidence against him; it is the basis for a presumption against him, because the law says that he who resorts to perjury, he who resorts to subornation of perjury to accomplish an end, this is against him, and you may take such action as the basis of a presumption of guilt.' There was certainly no error in instructing the jury to disregard evidence that was bound" (found) "to be false, and the further charge that false testimony, knowingly and purposely invoked by defendant, might be used against him, is but another method of stating the principle that the fabrication of testimony raises a presumption against the party guilty of such practice. 1 Phillips' Evidence, 448; *State* v. *Williams,* 27 Vermont, (1 Williams,) 724; 3 Russell on Crimes, 6th ed. 358."

All of the exceptions of the defendant have been carefully considered, are found to be without merit and accordingly overruled.

*H. R. Hewitt,* Deputy Attorney General (also on the brief), for the Territory.

*W. B. Lymer* and *Marguerite K. Ashford* (*Watson & Lymer* and *Marguerite K. Ashford* on the brief) for defendant.

### CONCURRING OPINION OF PERRY, J.

I concur in the conclusion that the trial judge did not err in instructing the jury as follows: "If you find from the evidence in this case beyond a reasonable doubt that the defense set up by the defendant Truslow is a false and fabricated one and if you further find that such false and fabricated defense was purposely and intentionally invoked by the defendant then you are instructed that such a false and fabricated defense forms the basis of a presumption against him because the law says that he who resorts to perjury to accomplish an end, this is

Perry, J., concurring.

against him and you take such action as the basis of a presumption of guilt." My reason for this concurrence is that there was before the jury evidence which was susceptible of the inference (a) that Branco's original authority to sell at not less than $18 per share was never modified and (b) that the defendant's testimony and defense to the effect that this authority was subsequently modified was purposely and intentionally false and fabricated. In order to support the instruction it is not necessary for this court to make a finding, in effect, that the defense on this point was in fact false and fabricated nor was it necessary in order to justify the giving of the instruction that the trial judge should have first found as a fact that this defense was false and fabricated. The trial judge had not, and this court has not, the power to make this finding or any other finding of fact upon this disputed issue or upon any other disputed issue in such a case as this on trial before a jury. I, therefore, make no finding, direct or indirect, as to whether the defendant's testimony and defense on the subject above noted was or was not false or fabricated. It suffices, to my mind, that the state of the evidence was such that the jury could have reasonably believed and found, as the verdict indicates that it did believe and find, that the defense was intentionally and purposely false and fabricated. This being the state and the nature of the evidence then before the court, it was proper for the trial judge to inform the jury of the law which would be applicable if it should find that the defense was intentionally false and fabricated. It is elementary that it was for the jury alone, and not for the presiding judge nor for this court, to say whether or not the defense was false and fabricated; but it was for the presiding judge to instruct what the applicable law was in the event that the defense should be found to be of that nature. I find nothing in the

authorities cited in the majority opinion which militates against my views here stated, except a general statement in 16 C. J. 986 which is not borne out by either of the Alabama cases cited in support of the text.

Upon all other points I concur in the reasoning of the majority opinion, as I do also in the conclusion that the exceptions should be overruled.