## TERRITORY *v.* SOLOMON WONG AND AKANA APANA.

## No. 1824.

ARGUED FEBRUARY 8, 1929.　　　　DECIDED FEBRUARY 18, 1929.

PERRY, C. J., BANKS AND PARSONS, JJ.

820

OPINION OF THE COURT BY PERRY, C. J.

The defendants, Solomon Wong and Akana Apana, together with one C. Ah Ping, were jointly tried under an indictment containing two counts. In the first the charge was that on July 18, 1927, the defendants did "feloniously and corruptly give and promise to give to E. J. Ross, the said E. J. Ross being then and there a police officer of and in the police force and police department of the City and County of Honolulu aforesaid, and being also then and there an investigator of and in the office of the city and county attorney of the said City and County of Honolulu, and to Charles S. Davis, the said Charles S. Davis being then and there the city and county attorney" of Honolulu, "the sum of two hundred dollars * * * with intent * * * to influence the judgment, opinion, decision and official acts of the said E. J. Ross and the said Charles S. Davis in their official offices,

capacities and functions aforesaid, in the matter of the apprehension and prosecution of them" the three defendants and two other persons "for unlawfully manufacturing, possessing, transporting, selling and otherwise dealing in intoxicating liquor in violation of the National Prohibition Act, which said matter might and did by law come before them," the said officials, "in their official capacities as aforesaid, and did then and there and thereby commit the crime of bribery in violation of the provisions of section 4309 of the Revised Laws of Hawaii 1925." The second count was in practically the same language and specified the same date for the offense, the only difference being that it charged bribery of Ross alone, in the same official capacities, and not of Davis. The jury returned a verdict finding Ah Ping "not guilty on both counts" and finding Wong and Apana "guilty of attempt to bribe on second count of indictment." The two convicted defendants bring the case to this court by bill of exceptions.

Under the exceptions four contentions have been argued on behalf of the appellants. They will be referred to in their order.

Section 4309, R. L. 1925, under which the prosecution was instituted and maintained, reads as follows: "Whoever corruptly gives or promises to any executive, legislative or judicial officer, or to any master in chancery, juror, appraiser, referee, arbitrator or umpire, any gift, gratuity, service or benefit, with intent to influence his vote, judgment, opinion, decision or other acts as such in any case, question, proceeding or matter pending, or that may by law come or be brought before him in his capacity as aforesaid, shall be punished by imprisonment at hard labor not more than two years, or by fine not exceeding five hundred dollars." The first contention is that Ross was not an executive officer within the mean-

ing of that section. There is no claim that he was either a legislative or a judicial officer. The undisputed evidence is that at the time of the commission of the alleged offense and for a considerable period of time prior thereto, Ross was a police officer of the City and County of Honolulu, holding a written commission to that effect, and a lieutenant of detectives in the police department and that at the date of the offense and for a few days prior thereto he was an "investigator" in the office of the attorney of the city and county under a written commission. In our opinion, a police officer, a lieutenant of detectives and an investigator holding a position of some permanency under the city and county attorney, are executive officers within the meaning of the statute under consideration.

In *Territory* v. *Wills*, 25 Haw. 747, it was held that a duly commissioned and acting police officer of the City and County of Honolulu is a public officer within the provisons of section 3944, R. L. 1915, now section 4201, R. L. 1925, relating to extortion. That section read: "Whoever, being a public officer of any description, civil, judicial, military, or other, by color of his office, wilfully and corruptly extorts from another for his own benefit and profit, any thing of value, knowing that he has not any legal authority or right to exact the same, is guilty of extortion in the second degree." This court said *inter alia*: "First as to whether defendant Wills, a duly commissioned and acting police officer, is a public officer within the meaning of the section above quoted. We think the solution of this question depends upon whether there has been created by law a public office in which he has been selected to serve as required by law. A public officer is one who holds a public office. There is no contention that the position which the defendant holds, if it rises to the dignity of an office, is not a public office. The contention is that a policeman is a mere employee

of the City and County of Honolulu and holds a position as distinguished from an office." It quoted Chief Justice Marshall's statement from *United States* v. *Maurice*, 2 Brock 96, 102, that "an office is defined to be 'a public charge or employment' and he who performs the duties of the office is an officer. If employed on the part of the United States, he is an officer of the United States." It continued: "The duties which a policeman is required to perform are of a public nature, such as conserving the public peace, etc., and his employment embraces the idea of tenure, duration, emoluments and, as we have said, duties of a public nature. We think that we are not violating any of the rules laid down by the eminent authority cited in holding that a duly commissioned and acting police officer of the City and County of Honolulu is a public officer within the meaning of the statute involved. To hold otherwise we think would be to narrow the words used to the exclusion of what the legislature intended to embrace. In common parlance a policeman is referred to as an officer and to hold that the term 'public officer,' as used by the legislature in the statute in question, does not include a duly commissioned and acting policeman, who is placed in the most favorable position of all public officers to extort money from individuals by color of his office, would render the legislation absurd." *Ib.*, pp. 750, 751, 752, 754.

Section 4201, R. L. 1925, relating to extortion by public officers, is practically the converse of section 4309, relating to bribery of public officers. The evil aimed at is the same, to-wit, the corruption of public officers so as to cause a misuse of their authority highly detrimental to the public interests. In the case of bribery, as in the case of extortion, to hold that police officers are not public officers or executive officers would be to unduly narrow the scope of the statutory provisions and to render nuga-

tory the legislative inhibitions in the large class of cases which most needs protection of that sort. As said by the court in the *Wills* case, policemen are in the most favorable position of all public officers to extort money and so also they are in the most favorable position by virtue of their powers and duties to render aid to prospective violators of the law in connection with their nefarious designs. One who is inclined to violate the prohibition law, or any other criminal statute, and is willing to secure unlawful immunity from exposure and arrest, would naturally think first of securing aid from those executive officers whose particular duty it is to enforce the law and to detect offenses and to make arrests therefor.

The second contention is that "there is no such crime as an attempt to bribe and, if there were, an attempt in this case was merged in the substantive crime of bribery;" and that the evidence shows that the offense of bribery was completed and that therefore there can be no conviction upon that evidence of an attempt to commit bribery. Section 3921, R. L. 1925, provides that: "An attempt to commit an offense is some act done towards committing and in part execution of the intent to commit the same." Section 4079 provides: "If on the trial of any person charged with felony or misdemeanor, it shall appear to the jury upon the evidence that the defendant did not complete the offense charged, but that he was guilty only of an attempt to commit the same, the person shall not by reason thereof be entitled to be acquitted, the jury may return as their verdict that the defendant is not guilty of the felony or misdemeanor charged, but is guilty of an attempt to commit the same, and thereupon the person shall be liable to be punished in the same manner as if he had been convicted upon an indictment for attempting to commit the particular felony or misde-

meanor charged in the indictment, and no person so tried as herein lastly mentioned shall be liable to be afterwards prosecuted for an attempt to commit the felony or misdemeanor for which he was so tried." Referring to the language of the statute that whoever corruptly "gives or promises" to a public officer "any gift, gratuity, service or benefit" is guilty of an offense, there can be no doubt that under an indictment charging a giving a conviction may lawfully be had of an attempt to so give. In other words, it is plain as a matter of English and of fact that there can be an attempt to give an unlawful gratuity. We think that it is equally clear that an attempt to promise such a gift is a legal possibility. An accused may, with the intent to corrupt a police officer and to secure his wrongful silence, failure to see and inaction, approach the officer and endeavor to place him in the required frame of mind or to ascertain whether he would be susceptible to a wrongful offer and may even exhibit a large sum of money, all in the effort to produce or to ascertain the existence of the desired attitude on the part of the officer and may do all this without either actually giving the money or promising to give it; and yet these acts would, within the meaning of the statute, be "done towards committing and in part execution of the intent to commit" the crime of bribery. Such a case as the one under consideration is easily distinguishable from those in which it is held that an attempt to commit an assault is a legal impossibility on the theory that the assault itself is an attempt to do a corporal injury to another. The argument of those cases is that an attempt to commit an assault would be an attempt to commit an attempt, which to the minds of those courts is a refinement of thought and language and acts for which there is no place in the criminal law. The doing of acts preparatory to the

making of an offer and in part execution of the intent to make an offer to pay bribe money can be easily contemplated and understood.

There was evidence before the jury to the following effect: that on July 13, 1927, the defendant Wong had a preliminary conversation with Ross in which the proposed bribery was discussed; that on July 18 Wong, with Apana and Ah Ping, proceeded in an automobile to the home of Ross at Wailupe, a distance from the center of Honolulu of about seven miles, Wong taking with him the sum of $200 in his pockets; that in proceeding to Ross' house Wong intended to use this money for the purpose of bribing Ross with reference to the unlawful manufacture by Apana of intoxicating liquor; that after some conversation between Wong and Ross in the latter's home, Wong said: "Pull the shade down, I got your money here;" that Wong reached into his pocket and drew therefrom some money; that when Wong said "Pull the shade down" Ross "went over towards the window to pull the shade down" and that "just then Charley Cassidy crawled out from underneath the punee", an article of furniture upon which Ross and Wong had been seated. Cassidy was at the time a deputy of the city and county attorney. The jury apparently took the view that this premature appearance of Cassidy interrupted the completion not only of the contemplated payment but also of the intended promise to pay. This view on the part of the jury was entirely consistent with the testimony as it stood. Certainly the money had not been paid to Ross when the interruption occurred; and the testimony was susceptible of the construction that there had not been even a promise to pay, but merely acts leading up to an offer or promise to pay. There was testimony, in other words, sufficient to support a finding of an uncompleted attempt to give and to promise to give a bribe. Under the circumstances

it is unnecessary to consider the claim that a conviction of an attempt to commit an offense cannot be sustained when the undisputed evidence shows that the attempt was successful and that the completed offense was committed.

The third contention is that "the court erred in instructing the jury to find Wong guilty if they found that his defense was a false and fabricated one." Briefly stated, the defense presented by Wong's testimony was that Ross himself had invited and instigated the bribery. The instruction complained of (prosecution's request No. 19) reads as follows: "The court further instructs you, gentlemen of the jury, that if you find from the evidence in this case beyond a reasonable doubt that the defense set up by the defendant Solomon Wong, is a false and fabricated one and if you further find that such false and fabricated defense was purposely and intentionally invoked by the said defendant then you are instructed that such a false and fabricated defense forms the basis of a presumption against him because the law says that he who resorts to perjury to accomplish an end, this is against him and you take such action as the basis of a presumption of guilt." The argument advanced is that if an accused sets up a false and fabricated defense he may be convicted under such an instruction as this, even though there is absolutely no evidence before the jury tending to show his guilt; and that the instruction as given was in effect a direction to the jury to convict the defendant if it found that his defense was false and fabricated. We think that the instruction ought not to be so understood and that it is not susceptible of that construction. The words of the instruction are that if the defense is found to be false and fabricated it "forms the basis of a presumption" against the defendant and that "such action" is "the basis of a presumption of guilt." This means, and was doubtless intended to mean, even if the instruction is read

as though standing alone, that the jury may regard the intentional false defense as justifying a presumption of guilt. There is certainly no express direction in the instruction that the jury must convict if it finds that the defense was fabricated. There is no express direction that the jury *must* draw a presumption of guilt if the defense is fabricated. It is merely told that the presentation of such a defense forms the basis of, that is, justifies, a presumption of guilt. It is just as though the instruction in the last sentence had read: "You *may* draw" a presumption of guilt. The jury was not told, "you take a presumption of guilt" or "you draw a presumption of guilt." The direction was instead, "you take or regard such action as the basis or foundation or justification of a presumption of guilt."

In *Territory* v. *Truslow*, 27 Haw. 109, 118, an instruction in almost these exact words was given and sustained. In the instruction as actually given at the trial of that case before the jury the words used were "you may take" such action as the basis of a presumption of guilt, although in both the majority and minority opinions the words are erroneously quoted as being "you take" instead of "you may take." The controversy in that case, however, did not center upon the point whether the instruction was mandatory or permissive, but was upon the issue of whether there was any evidence sufficient to justify the giving of such an instruction.

In *Allen* v. *United States*, 164 U. S. 492, 499, 500, the instruction as actually given at the trial similarly contained the words "you may take." The court said (p. 500): "There was certainly no error in instructing the jury to disregard evidence that was bound to be false and the further charge that false testimony, knowingly and purposely invoked by defendant, might be used against him, is but another method of stating the principle

that the fabrication of testimony raises a presumption against the party guilty of such practice."

There were other instructions which supported the view that the presiding judge did not intend, in giving No. 19, to command the jury to draw an inference of guilt or to return a verdict of guilty solely from the fact, if found, of a fabricated defense. In No. 21 the judge said: "I further instruct you that the burden of proof is upon the Territory and the law, independent of the evidence, presumes the defendants to be innocent and this presumption continues and attends them at every stage of the case until it has been overcome by evidence which proves them guilty to your satisfaction and beyond a reasonable doubt." In No. 4, requested by the defendants, the jury was told: "The burden of proof is on the Territory to prove to your satisfaction beyond all reasonable doubt every material allegation of the indictment herein. This burden never shifts and is always on the Territory and if, after a full and fair consideration of all of the evidence introduced, the Territory has not satisfied your minds beyond all reasonable doubt of every material allegation set forth in the various counts of the indictment herein, your verdict must be 'not guilty.'" In the course of a definition of a reasonable doubt the court said: "And if after an impartial comparison and consideration of all the evidence, or from a want of sufficient evidence on behalf of the government, to convince you of the truth of the charge, you can candidly say that you are not satisfied of the defendants' guilt, you have a reasonable doubt and you should acquit."

Calling the attention of the jury to matters which are ordinarily regarded as indicia or tests of veracity or lack of veracity, the court said: "These are the right considerations which should be borne in mind when you come to pass upon the relative value and weight of the testi-

mony of each of the witnesses, for you have to plant your verdict upon what you find the truth to be." In the light of these instructions, all of which were given after the reading of No. 19, as well as upon an analysis of the words in the very instruction under consideration, it would be an unduly strained construction to say that the court intended, or that the jury could have understood that the court intended, to command a verdict of guilty or a presumption of guilt, based solely upon the finding, if there should be one, that the defense was false and fabricated.

The fourth contention is that "the court erred in permitting the defendant Wong to be cross-examined, over objection, on matters not covered by his direct examination." Ross having testified that the preliminary conversation and approach occurred on July 13 and that the final visit at his home was on the 18th, the defendant Wong took the stand in his own behalf and gave testimony to the effect that the bribery or attempted bribery was at the invitation and instigation of Ross. In giving his testimony he referred only to the events of July 13 and of dates prior thereto. Upon cross-examination, over objection, the court permitted the prosecution to question Wong concerning a visit at Ross' house on July 18. In this there was no error. A defendant is not compellable to testify; but if he takes the stand in his own behalf he subjects himself to all proper cross-examination. The purpose of the cross-examination concerning what Wong said and did at Ross' house on July 18 was to test the accuracy and the truth of his testimony concerning the visit of July 13 and of Ross' alleged overtures to the defendant. To examine the defendant concerning the events of July 18 was one reasonable method of seeking to accomplish that purpose. His testimony and explanations concerning what Ross had said as to the visit of

July 18 could well be expected to enlighten the jury on the issue of whether Ross had instigated and solicited the commission of the offense. For the prosecution testimony had been presented that after Cassidy's appearance on the scene on July 18 he had gone with Wong into an inner room and had there detained him while Ross conversed with Apana in another part of the house and that while Apana and Ross were thus conversing Wong called out loudly: "Charley Cassidy, get me a drink of water." If Wong on cross-examination should admit this to be true, and he did substantially admit it, the jury might properly regard the statement as tending to substantiate Ross' version of the transaction rather than Wong's,—one possible inference being that the call for water was not in good faith but was intended as a means of notifying Apana that an officer of the law was present. Similarly Ross' testimony that on the 18th Wong, after Cassidy appeared, denied having the money on his person and asserted that Apana had it, if admitted by Wong on cross-examination to be true, as it was admitted in substance, would tend to destroy Wong's claim of his own innocence. The investigation on cross-examination as to the events of the 18th was under the circumstances properly admitted.

The exceptions are overruled.

*F. M. Brooks,* Deputy City and County Attorney (*C. S. Davis,* City and County Attorney, with him on the brief), for the Territory.

*E. H. Beebe* (*Thompson, Cathcart, Beebe & Winn* and *Marguerite K. Ashford* on the briefs) for defendants.